HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM LAMBERT and DEBORAH
LAMBERT,

                    Plaintiffs,

      v.

BENEFICIAL MORTGAGE
CORPORATION, a Delaware Corporation;
TRANS UNION, LLC, a Delaware Limited
Liability Company; and EQUIFAX
INFORMATION SERVICES, LLC, a
Georgia Limited Liability Corporation,

                    Defendants.

Case No. 3:05-cv-05468-RBL

ORDER DENYING DEFENDANT
TRANS UNION LLC'S MOTION FOR
PARTIAL OR FULL SUMMARY
JUDGMENT AND DENYING
PLAINTIFFS' MOTION TO STRIKE

## I. SUMMARY

This matter comes before the Court on Defendant Trans Union, LLC's Motion for Summary Judgment or Partial Summary Judgment. [Dkt. # 40]. Plaintiffs claim that Trans Union violated the Fair Credit Reporting Act ("FCRA") and the Washington Consumer Protection Act ("WCPA"). Defendant Trans Union, LLC, ("Trans Union") seeks a ruling that no genuine issue of material fact exists with regard to Plaintiffs' claims and that the claims therefore fail as a matter of law. In the alternative, Trans Union seeks a ruling for partial summary judgment as to any of Plaintiffs' individual claims. Having reviewed the parties' submissions and determining that oral argument is not necessary for the disposition of this motion, the Court hereby DENIES Defendant Trans Union's motion. The reasons for the Court's order are set forth below.

## II. BACKGROUND

The following alleged facts are set forth in a light most favorable to the non-moving parties: In September 2002, the Lamberts ("Plaintiffs") financed the purchase of a home through Beneficial Mortgage Corporation ("Beneficial"). This was a single real estate mortgage with one account number, jointly held by each of the Plaintiffs. In the spring of 2003, Plaintiffs began experiencing financial difficulties. By June 2003, Plaintiffs had fallen 60 days behind in their payment to Beneficial.

In an attempt to avoid foreclosure, Plaintiffs made an arrangement with Beneficial where the mortgage company agreed to accept a Deed in Lieu of Foreclosure in full satisfaction of the debt and all amounts past due. A Deed in Lieu of Foreclosure and Estoppel Affidavit were executed on July 29, 2003, and recorded on August 12 and August 22, 2003, respectively. Upon execution of the deed and estoppel affidavit, nothing further was owed, the account balance was zero, no further payments were due, and the debt was fully satisfied.

About a month after execution of the deed, Plaintiffs were unable to secure a loan from A&E Mortgage Specialists because Trans Union, a consumer reporting agency, was reporting the Beneficial account still had a balance of $284,865 and $7,800 past due. (Adams Decl. 15.) Then in October, Plaintiffs applied for financing with QPoint Mortgage which obtained credit information from Trans Union reporting a balance on the Beneficial account of $156,580 and $13,000 past due. Plaintiffs were unable to secure a loan while the Beneficial account still showed a balance and past due amount. Trans Union was allegedly reporting the Beneficial account incorrectly as late as October 2004.

During the span of time between the execution of the Deed in Lieu of Foreclosure and October 2004, Plaintiffs made many attempts to correct the false reporting. On or about November 18, 2003, Trans Union sent written notices to Beneficial informing it that Plaintiffs were disputing the reporting of the account. The Consumer Dispute Verification ("CDV") forms sent to Beneficial from Trans Union merely stated that Plaintiffs' disputes were: "Claims company will change. Verify all account information." (Reger Decl. Ex. B, E.) Trans Union did not inform Beneficial that the actual disputes by Plaintiffs were that there was no balance, the account was not foreclosed, the account was not in collection, and that the property had been given to Beneficial in satisfaction of the entire balance and any amounts past due. In 2004, Mrs. Lambert sent an online dispute form, which stated the following:

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION TO STRIKE
Page - 2

> This was not a foreclosure. This account closed in Sept 2003 no past due or bal. This is 5th request . . . We have sent 4 other requests to get this account correct with benfcl/hfc. Account did not go to collections. This was not a foreclosure. The company reported on 11/01/2002 this information to you. They had the house given back in lieu of in August 2002 we did not owe a balance or past due.

(Deborah Lambert Decl. Ex. R.) The CDV from Trans Union that followed stated: "Disputes present/prev Acct Status, Pymt Hist Profile. Pymt Rating. Verify Pymt Hist Profile. Acct Status and Rating. Special Comment. Compliance Condition and/or remarks message disputed."

Even when Trans Union did eventually report the balance as zero on Deborah Lambert's November 2003 credit report, it still reported an amount past due of $20,632. On the same date that Deborah Lambert's credit was reported at a zero balance, William Lambert received a credit report from Trans Union for the same jointly held Beneficial account that showed a balance of $156,580.

In December of 2003, an employee of Beneficial prepared a Universal Data Form ("UDF") that was sent to Trans Union, indicating that the account in question should be revised to show (1) no balance owing, (2) no past due amount, and (3) that the account was not open. (Boan Aff.) However, Trans Union has presented evidence that the UDF referred to an account number other than the one in question in this litigation. (Stockdale Decl. Ex. A.)

Plaintiffs declare that because of Trans Union's alleged conduct, either or both of them suffered from embarrassment, humiliation, frustration, stress, and strain on their marriage. Their son, Aaron Lambert, observed that the distress suffered by his parents was significant.

## III. DISCUSSION

A. Plaintiffs' Motion to Strike

Plaintiffs move to strike Trans Union's separate statement of undisputed facts pursuant to this Court's Local Rules. [Dkt. # 46]. The Court greatly appreciates adherence to the Local Rules. Nevertheless, this Court rules on this summary judgment motion based on all the relevant facts presented to it by either party. However, the Court does view the facts in the light most favorable to the Plaintiffs. Accordingly, the Court DENIES Plaintiffs' Motion to Strike. [Dkt. # 46].

B. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION TO STRIKE
Page - 3

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

C.   The Fair Credit Reporting Act: 15 U.S.C §1681

"The FCRA was the product of congressional concern over abuses in the credit reporting industry." *Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). "The purpose of the FCRA is to assure consumers that reporting agencies use reasonable procedures for collecting, using, and disseminating information." 15 U.S.C. § 1681(b). Trans Union's purported liability under the WCPA is co-extensive with its purported liability under the FCRA. *See* RCW § 19.86, 19.182.150, 19.182.060(2) (reasonable procedures), and 19.182.090 (reinvestigation obligations). Thus, the decision to deny summary judgment as to the FCRA claims is dispositive of the decision to deny the parallel WCPA claims.

D. Section 1681e(b)

"In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a consumer reporting agency prepared a report containing inaccurate information. *Guimond*, 45 F.3d at 1333. Plaintiffs provide evidence that the Deed in Lieu of Foreclosure should have had the effect of fully satisfying Plaintiffs' obligation under the Beneficial mortgage. However, Trans Union's various credit reports inaccurately state Plaintiffs' obligations, where the reports stated that amounts were past due or that a balance remained long after the deed was executed. Moreover, Trans Union prepared two reports in one day for the same account, one for each spouse, which are inconsistent with each other. There is sufficient evidence that at least one of the reports is inaccurate if they report differing statuses for the joint account on the same date. Accordingly, Plaintiff has produced evidence tending to show that Trans Union prepared a report containing inaccurate information.

Nevertheless, Trans Union argues that its report was accurate because the Beneficial account *was* past due and placed into collection. Trans Union continues by arguing that the agreement between Beneficial and Plaintiffs did not express how the account should be reported following execution of the deed. Even if one were persuaded by Trans Union's argument that the terms of the agreement did not express how the account should be reported, whether Trans Union's reporting was accurate would at the very least remain a question of fact because a jury would need to resolve what the agreement did dictate. In either case, it cannot be said that Trans Union's reports were accurate as a matter of law.

It is clear that liability under § 1681e(b) is also predicated on the reasonableness of the consumer reporting agency's procedures in obtaining credit information. *Guimond*, 45 F.3d at 1333 (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Bryant v. TRW, Inc.*, 689 F.2d 72, 77 (6th Cir. 1982); *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982)). An agency can escape liability, even where it has prepared an inaccurate report, if it can be shown that the agency followed reasonable procedures in generating a report. *Id.* "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.*

Trans Union's inconsistent reporting presents a factual question whether it followed reasonable procedures to assure maximum possible accuracy. Plaintiffs present evidence that Trans Union was reporting the same jointly held Beneficial account with differing statuses for each spouse. When Deborah Lambert finally got a report stating that she had a zero balance on the Beneficial account, her husband received a report showing a balance of $156,580 on the same date. Determining whether inconsistencies between two reports for a joint account constitute evidence of the employment of unreasonable procedures for preventing inaccuracies is a question of fact. *Cairns v. GMAC Mortgage Corp.*, 2007 WL 735565 at *5 (D. Or. Mar. 5, 2007); *see also Philbin, Jr. v. Trans Union Corp.; TRW*, 101 F.3d 957, 966 (3d Cir. 1996) (holding that a jury could reasonably conclude that defendant failed to follow reasonable procedures where it issued two reports that were inconsistent with each other). This case, like so many involving § 1681e(b), is fact driven; therefore, it is appropriate for the jury and not the Court to determine the reasonableness of Trans Union's procedures in generating its reports.

E. Section 1681i

Under § 1681i(a)(1)(A), a consumer reporting agency must reasonably reinvestigate an item in a

consumer's credit file after the consumer directly notifies the agency of the possible inaccuracies. Trans Union contends that the use of an automated consumer dispute verification system necessarily qualifies as a reasonable reinvestigation. *See, e.g., Quinn v. Experian Solutions*, 2004 WL 609357 at *6 (N.D. Ill. Mar. 24, 2004); *McClelland v. Experian*, 2006 WL 2191973 at *6 (N.D. Ill. July 28, 2006); *Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225, 1233 (W.D. Wis. 2005). However, the current case is distinguishable because a question of fact exists whether Trans Union's CDV to Beneficial included all "relevant information" received from the consumer regarding the dispute, as required under § 1681i(a)(2)(A). In late 2003, Plaintiffs' various disputes regarding the Beneficial account stated that the account was not in collections, it had been closed in 7/03, it was not in foreclosure, it had no balance, and it was not past due. The subsequent CDVs sent to Beneficial from Trans Union merely stated that Plaintiffs' disputes were: "Claims company will change. Verify all account information." (Reger Decl. Ex. B, E.) Later, in 2004, Mrs. Lambert sent an online dispute form, which stated the following:

> This was not a foreclosure. This account closed in Sept 2003 no past due or bal. This is 5th request . . . We have sent 4 other requests to get this account correct with benfcl/hfc. Account did not go to collections. This was not a foreclosure. The company reported on 11/01/2002 this information to you. They had the house given back in lieu of in August 2002 we did not owe a balance or past due.

(Deborah Lambert Decl. Ex. R.) The CDV that followed stated: "Disputes present/prev Acct Status, Pymt Hist Profile. Pymt Rating. Verify Pymt Hist Profile. Acct Status and Rating. Special Comment. Compliance Condition and/or remarks message disputed." Though a jury could find that the codes used by Trans Union provide all relevant information required under § 1681(a)(2)(A), it is not conclusive as a matter of law.  A question of fact exists whether the information in the CDV provided all the "relevant information" required by the statute.

Moreover, there is a question whether the use of the CDV alone satisfies the obligations under § 1681(a)(1)(A) in all circumstances. "The plain language of the statute places the burden of reinvestigation on the consumer reporting agency." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Because the consumer reporting agencies have the opportunity to profit from the collection and dissemination of credit information, they bear "grave responsibilities" to ensure the accuracy of that information. 15 U.S.C. § 1681(a)(4). "Consequently, the 'grave responsibilit[y]' imposed by § 1681i(a) must necessarily consist of something more than parroting information received from the original sources." *Cairns*, 2007 WL 735565 at

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION TO STRIKE
Page - 6

*6 (citing *Cushman*, 115 F.3d at 225). Merely shifting the burden back to the consumer or creditor by doing nothing more than repeatedly relaying the information delivered to the consumer reporting agency may not fulfill the obligation set forth under this statute. *Id*. (citing *Cushman*, 115 F.3d at 225.)

Trans Union's interpretation of § 1681i(a) would require it only to replicate the efforts undertaken in order to comply with § 1681e(b), namely relaying information from the original sources. However, such a reading would suggest that the two sections are substantially duplicative of each other. The Court hesitates to accept an interpretation of the statute that would render some of the statutory language superfluous.

For the reasons stated in the above two paragraphs, a consumer reporting agency may, in certain circumstances, need to verify the accuracy of its initial source of information. *Cushman*, 115 F.3d at 225 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)). The determination of whether a consumer reporting agency has a duty to go beyond the original source depends on a set of factors: (1) "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable" and (2) "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id*. (citing *Henson*, 29 F.3d at 287) (internal quotations omitted). Whether Plaintiffs' various and continuous disputes should have alerted Trans Union to the possibility that Beneficial may be an unreliable source is a question for the jury. *See id*. at 225-26 (citing *Henson*, 29 F.3d at 287). Similarly, the question of weighing the harm to consumers from inaccurate information versus the cost to Trans Union of verifying the accuracy of Beneficial is a question best left for the jury. *See id*. (citing *Henson*, 29 F.3d at 287).

The use of a CDV does not automatically qualify as a reasonable reinvestigation in all circumstances as evidenced by the above analysis. Whether the continuous use of a CDV for Plaintiffs' multiple disputes constituted a reasonable reinvestigation each time is a question of fact to be answered by a jury.

F. <u>Section 1681n</u>

Section 1681n allows a plaintiff to recover statutory and punitive damages for willful noncompliance with the FCRA. 15 U.S.C. § 1681n(a)(1),(2). In order to be a willful act, it must have been done "knowingly and intentionally." *Reynolds v. Hartford Fin. Servs. Grp., Inc.*, 435 F.3d 1081, 1097 (9th Cir. 2006) (internal quotations omitted), *cert. granted*, *GEICO Gen. Ins. Co. v. Edo*, 75 U.S.L.W. 3129 (U.S. Sept. 26, 2006)

(No. 06-100)[1]. An act done with mere negligence is not willful. *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). Although a willful act must be intentional, it need not be done with malice or evil motive. *Id.* (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Cushman*, 115 F.3d at 226). Following the Third Circuit's interpretation, the Court in *Reynolds* stated that as used in the FCRA "willfully" entails a "conscious disregard" of the law. *Id.* (citing *Cushman*, 115 F.3d at 227). "Conscious disregard" means "either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights." *Id.* (quoting *Cushman*, 115 F.3d at 227).

In arguing that Trans Union acted with reckless disregard, Plaintiffs contend that Trans Union (1) repeatedly failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' information; (2) failed to properly reinvestigate disputed items; and (3) failed to provide all "relevant information" with regard to Plaintiffs' disputes to Beneficial. Plaintiffs further assert that Trans Union had a system in place that did not assure maximum possible accuracy, pointing out that Trans Union failed to correct its reporting even after receiving notice from Beneficial.[2]

This Court concluded above that material issues exist as to whether Trans Union's alleged conduct was reasonable under the FCRA. With regard to punitive damages, the Court examines whether the alleged conduct rose to the level of willfulness or reckless disregard. Plaintiffs' evidence of Trans Union's repeated inaccurate reporting is sufficient to create an issue of material fact whether Trans Union's alleged conduct amounts to reckless disregard. Thus, the Court will determine the Plaintiffs' entitlement to a punitive damages jury instruction after hearing the evidence.

---

[1]At the Supreme Court, one of the issues discussed at oral argument was the Ninth Circuit's interpretation of the meaning of "willful" under the FCRA. This Court continues to adhere to the interpretation opined in *Reynolds* until the Supreme Court rules on this issue.

[2]The Court acknowledges the problem with the misstated account number from the Affidavit of Pouti S. Boan. Nevertheless, whether the existing information in the Universal Data Form should have triggered Trans Union to change its reports for Plaintiffs is a question left for the jury.

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION TO STRIKE
Page - 8

1

G. Damages and Causation

2

The FCRA provides for compensation in the form of actual damages if a consumer reporting agency's

3

negligent failure to comply with any provision of the FCRA causes such damages. 15 U.S.C § 1681o. As

4

shown above, a consumer can also recover punitive damages for willful noncompliance. 15 U.S.C. § 1681n.

5

Recovery of damages is not predicated on evidence of a denial of credit, but may be appropriate even where

6

mere credit inaccuracies exist. *See Guimond*, 45 F.3d at 1333. Where the issue of damages depends on whether

7

a violation of the FCRA occurred, as it does here, the question of damages is reserved for the jury. *Cairns*,

8

2007 WL 735564 at *7.

9

Plaintiffs have also provided sufficient evidence to raise a triable issue whether they were damaged by

10

a denial of credit based on Trans Union's allegedly inaccurate reporting. The declaration provided by Mr.

11

Adams, a mortgage broker for A&E Mortgage Specialists, states that Plaintiffs would be unable to complete

12

financing on their loan request while the Beneficial account was still showing a balance and past due amount.

13

Plaintiffs need only produce evidence from which a reasonable trier of fact could infer that the alleged

14

inaccurate reporting was a "substantial factor" that brought about A&E Mortgage Specialists' denial of credit.

15

*See Philbin*, 101 F.3d at 968. Plaintiffs have met that burden in this instance with the credit denial described

16

by Adams.

17

Actual damages can also include recovery for emotional distress and humiliation. *Guimond*, 45 F.3d

18

at 1333. The Ninth Circuit has not addressed what evidence is required to support an award of emotional

19

distress damages under the FCRA. However, the Ninth Circuit has stated in another context that "[w]hile

20

objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in

21

the Ninth Circuit, or the Supreme Court." *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1101 (D. Ariz.

22

2003) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding in a

23

discrimination action that the plaintiff's testimony alone is sufficient to qualify the jury's award of emotional

24

distress damages)) (internal quotations omitted). *See also Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir.

25

1994) (acknowledging that "compensatory damages may be awarded for humiliation and emotional distress

26

established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of

27

economic loss or mental or physical symptoms.")

28

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION TO STRIKE
Page - 9

1   Deborah Lambert declares that she suffered from embarrassment, humiliation, frustration, stress, and

2   strain on her marriage. William Lambert describes the alleged credit reporting mistakes as stress inducing and

3   devastating. Meanwhile, their son verifies their alleged suffering through his own observations that their

4   distress during that time was significant. While Plaintiffs' evidence is not overwhelming, the evidence of

5   emotional distress is sufficient to create a question for a jury, particularly when the facts are viewed in the light

6   most favorable to the Plaintiffs. The Court denies Trans Union's motion for summary judgment regarding

7   emotional distress damages.

8                                                  IV. CONCLUSION

9   For the above reasons, the Court DENIES in full Defendant Trans Union's Motion for Summary

10  Judgment [Dkt. # 40] and also DENIES Plaintiffs' Motion to Strike [Dkt. # 46].

11

12  DATED this 4th day of May, 2007.

13

14

15                                          RONALD B. LEIGHTON
                                            UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANT TRANS UNION'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION TO STRIKE
Page - 10